**AFFIRMED and Opinion Filed March 23, 2023**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-00649-CR**

**MICHAEL RAY BREWSTER JR., Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 366th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 366-82016-2022**

## MEMORANDUM OPINION

Before Justices Carlyle, Goldstein, and Kennedy
Opinion by Justice Goldstein

Michael Ray Brewster, Jr., appeals his indecency with a child conviction. A jury convicted Brewster, and the trial court sentenced him to twenty-seven years' confinement. In a single issue, Brewster complains that perjured testimony was admitted against him, resulting in harmful error. We affirm the trial court's judgment.

In May 2022, Brewster was charged by indictment with two counts of indecency with a child. At trial in June 2022, Complainant testified she was born in July 2005. Complainant testified that Brewster, Mother's boyfriend, sexually

assaulted Complainant once when she was "11 or 12" and once "almost exactly a year later." Each time, Complainant made an outcry to Mother.

Mother testified as the State's outcry witness. The prosecutor began his direct examination of Mother by pointing out that Mother had her own attorney sitting next to her and stating that he wanted to talk to Mother about why she had an attorney present but first wanted to introduce Mother to the jury. After questioning Mother about her move to Texas from California and her relationship with Brewster, who is the father of Mother's son, the prosecutor elicited that Mother found out when she arrived at court that she had a warrant out for her arrest for "hot" checks she had written. After finding out she had a warrant, Mother "went downstairs" and "made payment arrangements to take care of it." Mother testified she wrote the checks approximately four years before to Hobby Lobby and Tom Thumb, but she could not remember how many checks she wrote, the amounts of the checks, or the exact dates she wrote the checks.

The prosecutor then asked Mother about "another situation with a check that happened later on," and Mother answered that she had recently "written a check to the school for Scholastics and the check wasn't in [her] name." Mother testified that, by "Scholastics," she meant a book fair, and she affirmed that the check was from Brewster's account; however, Mother testified she put her own name on the check. The prosecutor then questioned Mother about Complainant's outcries.

–2–

On cross-examination, Brewster's counsel told Mother the State made its file on her theft by check cases available and asked if it was true that Mother wrote six checks: three checks to Hobby Lobby and three checks to "Check Connection." Mother testified she had never been to Check Connection and did not know what type of place it was. Counsel asked if Mother was unaware that three of the checks "were passed to steal from someone or to Check Connection" and Mother reiterated that the checks were written to Tom Thumb. Counsel asked if it would refresh her memory to see her charging instrument, and Mother agreed it would. After reviewing her charging instrument, Mother maintained her testimony that the checks were written to Tom Thumb and agreed her payment plan on the day of trial was for $1812.95.

Counsel also asked Mother if she "recognize[d] the school resource officer from your son's school in here, correct? Have you seen him here today?" and Mother answered "No." When asked if she knew "who [her] school resource officer is," Mother answered, "Yes. He's not in here that I can see." Mother admitted she passed a check at the book fair but testified she did not sign Brewster's name to the check but did sign her own name.

After Mother's testimony concluded, and before calling the next witness, Brewster's counsel asked the court if he "can get the school resource officer" and "have a hearing outside the presence of the jury." Once the jury was released for lunch, Brewster's counsel stated he talked to the school resource officer. Counsel

averred that Mother "signed Michael Brewster's name to the check, that's aggravated perjury" and asked that she be given an opportunity to speak to her lawyer before counsel impeached her. The trial judge indicated that Mother could talk to her attorney at that time.

Once the jury returned to the courtroom, the prosecutor again questioned Mother about the check she wrote on Brewster's account. After confirming the account was in Brewster's name, the prosecutor reminded Mother that she previously testified she signed her own name to the check. After establishing that Mother had not seen the check since it was sent to the school, the prosecutor asked Mother if she had had a "chance to review the check today." Mother said she had reviewed the check and admitted that she signed Brewster's name on the check. Mother further testified that she did not lie about anything she said regarding what Complainant told her.

On cross examination, Brewster's counsel asked Mother "So you lied to the police, you lied to the school, you lied to the prosecutors, and you lied to the jury, yes?" and she testified "No." When asked by counsel if she was "telling the jury that you forgot that you forged Michael's name on that check?" Mother testified that she "made a mistake." Brewster's counsel argued at closing that Mother lied to the jury and "committed aggravated perjury on the stand." The jury subsequently found Brewster guilty of one count of indecency with a child and not guilty of the other. At Brewster's election, the judge assessed punishment. This appeal followed.

–4–

In a single issue, Brewster argues perjured testimony was admitted against him, resulting in harmful error. Specifically, Brewster complains that Mother falsely testified that (1) the warrant for her arrest involved a "couple of checks" when the warrant actually identified six checks; (2) she did not know who the school resource officer was; and (3) she did not know "why the officer would say that she signed her name to [Brewster's] check at the book fair."

A conviction procured through the use of false testimony is a denial of the due process guaranteed by the Federal Constitution. *Ex parte Ghahremani*, 332 S.W.3d 470, 477–78 (Tex. Crim. App. 2011). The use of false testimony at the punishment phase is also a due-process violation. *Id.* A due-process violation may arise not only through false testimony specifically elicited by the State, but also by the State's failure to correct testimony it knows to be false. *Id.* "It does not matter whether the prosecutor actually knows that the evidence is false; it is enough that he or she should have recognized the misleading nature of the evidence." *Id.* (quoting *Duggan v. State*, 778 S.W.2d 465, 468–69 (Tex. Crim. App. 1989)).[1]

The knowing use of false testimony violates due process when there is a "reasonable likelihood" that the false testimony affected the outcome. *Id.* at 478. We have characterized this as a requirement that the false testimony must have been

---

[1] Though the case law in this area frequently refers to "perjured" testimony, there is no requirement that the offending testimony be criminally perjurious. *Id.* It is sufficient if the witness's testimony gives the trier of fact a false impression. *Id.* These rules are not aimed at preventing the crime of perjury—which is punishable in its own right—but are designed to ensure that the defendant is convicted and sentenced on truthful testimony. *Id.* at 477–78.

material.  *Id.*  This standard is more stringent (i.e., more likely to result in a finding of error) than the standard applied to *Brady*[2] claims of suppressed evidence, which requires the defendant to show a "reasonable probability" that the suppression of evidence affected the outcome.  *Id.*  The "reasonable likelihood" standard is equivalent to the standard for constitutional error, which "requir[es] the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained."  *Id.* (quoting *United States v. Bagley*, 473 U.S. 667, 680 n.9 (1985) (plurality op.)).

The record before us reflects that the prosecutor knew at the commencement of trial of Mother's warrant and hot check charges and shared that information with the defense and the jury.  There is no due process violation where, as here, the State corrects false testimony, and the defense uses it to impeach Mother's credibility.  *Vasquez v State*, 67 S.W. 3d 229 (Tex. Crim. App. 2002) (no due process violation where State corrected false testimony in closing argument and defense used information to support theory of case and attack witness's credibility).  The State had an ethical and constitutional duty to correct known false evidence, *see Duggan*, 778 S.W.2d at 468, and it took steps to do so in this case.

Here, the prosecutor brought up the subject of the warrant with Mother, and she admitted the warrant was for hot checks.  She did not specify the number of

---

[2] *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (due process is violated when the State refuses to disclose requested evidence that is favorable to the defendant regarding either punishment or guilt).

checks but agreed there were six checks at issue when questioned by Brewster's counsel. While Mother testified that she "had a couple of checks that [she] had written that was [sic] still pending" and "had a warrant that [she] didn't know about," she did not testify as to the exact number of checks at issue. On cross examination, Mother agreed that there were six checks when asked by Brewster's counsel. This record does not support Brewster's characterization of Mother's reference to "a couple of checks" as a lie.

Similarly, the record does not support Brewster's argument that Mother lied about not knowing the school resource officer. Brewster's argument relies on the following exchange:

> COUNSEL: Now, you recognize the school resource officer from your son's school in here, correct? Have you seen him here today?
>
> MOTHER: No.
>
> COUNSEL: Do you know who your school resource officer is?
>
> MOTHER: Yes. He's not in here that I can see.

From this exchange, it is clear that Mother did not deny knowing the school resource officer; rather, she knew who he was but did not see him.[3]

Finally, Brewster asserts Mother lied about whether she signed Brewster's name to the book fair check. The record shows the State did not use Mother's testimony that she signed her own name to that check. Instead, once Brewster's

---

[3] We also note that after Mother testified, Brewster's counsel asked to call in the school resource officer, indicating the officer was not in the courtroom during Mother's testimony.

counsel pointed out the error, the State elicited Mother's testimony that she did sign Brewster's name to the check. Brewster's counsel then impeached Mother for her "mistake."

The jury had the unfettered opportunity to determine Mother's credibility with full knowledge of the asserted false testimony. Our review of the record leads us to the conclusion that none of Brewster's arguments establish that there is a "reasonable likelihood" that Mother's challenged testimony affected the outcome of the trial. *See Ex parte Ghahremani*, 332 S.W.3d at 478. In reaching this conclusion, that Brewster's conviction was not procured through the use of false testimony. we further note that Complainant testified to the details of the underlying offense, and a child victim's testimony alone is sufficient to support a conviction for aggravated sexual assault of a child or indecency with a child. *See* TEX. CODE CRIM. PROC. art. 38.07; *Keller v. State*, 604 S.W.3d 214, 226 (Tex. App.—Dallas 2020, pet. ref'd). We overrule Brewster's single issue.

We affirm the trial court's judgment.

/Bonnie Lee Goldstein/
BONNIE LEE GOLDSTEIN
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
220649F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

MICHAEL RAY BREWSTER JR.,
Appellant

No. 05-22-00649-CR         V.

THE STATE OF TEXAS, Appellee

On Appeal from the 366th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 366-82016-
2022.
Opinion delivered by Justice
Goldstein. Justices Carlyle and
Kennedy participating.


Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.


Judgment entered March 23, 2023